1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHELLE SNOW,                          No. 1:22-cv-00699-DC-CKD

12                 Plaintiff,

13        v.                                 ORDER GRANTING DEFENDANT'S
                                             MOTION FOR SUMMARY JUDGMENT
14   CONAGRA BRANDS INC.,
                                             (Doc. No. 48)
15                 Defendant.

16

17        This matter is before the court on Defendant Conagra Brands Inc.'s motion for summary

18   judgment. (Doc. No. 48.) Pursuant to Local Rule 230(g), the pending motion was taken under

19   submission to be decided on the papers. (Doc. No. 61.) For the reasons explained below, the court

20   will grant Defendant's motion for summary judgment.

21                                   **BACKGROUND**

22   **A.    Factual Background[1]**

23        1.    Plaintiff's Employment History with Defendant

24        Defendant is headquartered in Chicago, Illinois and operates a multi-national food

25   manufacturing company. (UF ¶ 1.) Defendant has a written policy prohibiting discrimination,

26

27   _____
     [1] The relevant facts that follow are undisputed unless otherwise noted and are derived from the
28   undisputed facts as stated by Defendant, responded to by Plaintiff, and replied to by Defendant.
     (Doc. No. 58-1 ("UF")). Plaintiff did not file a separate statement of undisputed facts.

                                          1

harassment, and retaliation based on a protected category or activity, and encouraging employees to report instances that violate this policy. (UF ¶¶ 2–3.) Defendant has a process for employees to engage in the interactive process and seek reasonable accommodation. (UF ¶ 4.) Defendant also has a "no-fault written attendance policy," which "assesses attendance points for tardiness, absences, and other specific events" unless the absence is covered "by contractual or legal reasons, occupational illness or injury, approved family and medical leave, and leaves of absence approved by [Defendant]." (UF ¶ 5.)

Plaintiff is employed by ConAgra Foods Packaged Foods, LLC, which is a wholly-owned subsidiary of Defendant, and has worked at its Oakdale Plant since July 27, 1985. (UF ¶¶ 8–10.) Plaintiff is also a member of the bargaining unit of Teamsters Local 948 ("the Union"). (UF ¶ 8.) The Collecting Bargaining Agreement ("CBA") between Defendant and the Union establishes many terms and conditions of Union members' employment, including redress for discipline, work schedules, and filling vacant roles. (UF ¶ 11.)

The Oakdale Plant (where Plaintiff works) operates twenty-four (24) hours per day and employs anywhere from 600 to 900 employees, depending on whether it is the busy season, which is referred to as "Fresh Pack" and runs from June to November each year. (UF ¶¶ 6–7.) Most employees work seven (7) days per week during Fresh Pack. (UF ¶ 7.)

For the past several years, Plaintiff submitted notes to request an accommodation of a six-day workweek because she suffers from post-traumatic stress disorder ("PTSD"), anxiety, and obsessive-compulsive disorder ("OCD"). (UF ¶¶ 16, 18.)[2] Plaintiff has suffered from PTSD since 1999, and she also suffers from depression and anxiety, which are part of her PTSD. (UF ¶¶ 16, 105.) Plaintiff has taken multiple leaves of absence from her employment in addition to her six-

---

[2] Plaintiff purportedly disputes this fact, stating that "Plaintiff was forced by Defendants to resubmit her doctor's note for work accommodation, despite no changes in her condition, in order to continue receiving her [six-]day work week accommodation." (*See* Doc. No. 58-1 at 21 (UF ¶ 18.)). However, this assertion does not actually dispute that Plaintiff did in fact submit doctor's notes concerning her requested accommodation at various times during her employment. Further, the exhibit cited by Plaintiff concerns Plaintiff's deposition testimony regarding Plaintiff's mediation with the Union over her requested accommodation. (*See* Doc. No. 51 at 12.) That deposition testimony does not contradict the statement that Plaintiff submitted doctor's notes on various occasions requesting a six-day workweek accommodation.

1    day workweek accommodation. (UF ¶ 19.)

2         Throughout her employment with Defendant, Plaintiff has held at least five different

3    positions, including "belt sorter," "case operator," "lab technician," "food service," and "raw

4    material driver." (UF ¶ 12.) Plaintiff had different supervisors while holding these various

5    positions. (UF ¶ 13.) Della Craver, a "Warehouse Manager for the Finished Goods and Raw

6    Materials Department," supervised[3] Plaintiff from 2016 until March 2024 and oversaw the

7    supervisors for the "Finished Goods and Raw Materials Department at the Oakdale Plant." (UF ¶¶

8    14–15.) Ms. Craver reports to Erica Carvalho. (UF ¶ 14.)

9         Since 2019, Plaintiff has worked as a Raw Material Receiver and her direct supervisors

10   included Valerie Renslow, Josh Borden, Jaime Martinez, and Bryon Flores.[4] (UF ¶¶ 41–42.) The

11   Raw Material Receiver position is a critical position at the Oakdale Plant because it involves data

12   entry on a computer and tracking the amount of raw product delivered. (UF ¶ 20.) That position

13   typically required no work schedule restrictions. (UF ¶ 21.)

14       2.    Plaintiff's Employment Grievances and Defendant's Corrective Actions

15        As described below, since 2020, Plaintiff lodged many grievances and complaints with the

16   Union and/or Defendant regarding alleged employment incidents, and Defendant has issued to

17   Plaintiff several disciplinary notices referred to as "Corrective Action Notices."

18        In her deposition testimony, Plaintiff averred that on January 25, 2020, her co-worker Ray

19   Senseney made a "rude" comment to her in that he accused her of stealing company time. (UF ¶

20   47.) Plaintiff stated she reported Mr. Senseney's comment to Ms. Craver. (UF ¶ 48.) Plaintiff

21   stated that Ms. Craver told Plaintiff to "get tougher skin." (UF ¶ 48.) Plaintiff stated she believes

22    

23   [3] The parties dispute whether Ms. Craver directly or indirectly supervised Plaintiff. However,
     there is no dispute that Ms. Craver supervised Plaintiff, in some capacity, between 2016 and
24   2024. The court finds that for the purposes of this motion, it is immaterial whether Ms. Craver
     directly or indirectly supervised Plaintiff and need not resolve this dispute.
25    

26   [4] Ms. Renslow worked as a "Team Leader Warehouse" in the raw materials department from
     1990 to 2021. (UF ¶ 43.) Mr. Borden worked as a "Team Leader Warehouse" in the raw materials
27   department from 2021 to 2022. (UF ¶ 44.) Mr. Martinez worked as a "Team Leader Warehouse"
     in the raw materials department in 2023. (UF ¶ 45.) Mr. Flores worked as a "Team Leader
28   Warehouse" in the raw materials department from 2023 to the present. (UF ¶ 46.)

1    Ms. Craver responded in this manner because Ms. Craver did not care about Mr. Senseney's

2    conduct. (UF ¶ 48.)

3        On March 30, 2020, Defendant issued Plaintiff a "Corrective Action Notice" for a verbal

4    warning for "[n]eglect of duty or failure to meet a reasonable measure of efficiency and

5    productivity. Poor work performance." (UF ¶ 49.) On April 2, 2020, Defendant issued Plaintiff a

6    "Corrective Action Notice" for a first written warning for the same reasons as the previous action.

7    (UF ¶ 50.) Plaintiff stated in her deposition testimony that Defendant disciplined her because she

8    called the Union to grieve an issue related to Defendant's failure to pay overtime wages. (UF ¶

9    51.) Later, on July 28, 2020, Plaintiff received another "Corrective Action Notice" from

10   Defendant "for a final written warning due to Plaintiff's failure to follow reasonable instructions

11   of a supervisor and for violation of [Defendant]'s code of conduct." (UF ¶ 52.) Defendant

12   reduced this final warning to a first warning to resolve the grievance Plaintiff filed with the Union

13   on that same day. (UF ¶ 53.)

14        Plaintiff was a witness at an arbitration between Defendant and the Union in March 2021.

15   (UF ¶ 54.) This arbitration concerned the termination of three employees for alleged sexual

16   harassment. (UF ¶ 54.) In her deposition testimony, Plaintiff alleged that because she participated

17   in these arbitration proceedings, Ms. Craver directed Mr. Borden to watch Plaintiff and check on

18   her every fifteen to twenty minutes. (UF ¶¶ 55, 57.) Plaintiff further stated that Mr. Borden would

19   ask Plaintiff "if she was working and told her that she better be working." (UF ¶ 55.) Despite

20   Plaintiff's claim, Mr. Borden never told Plaintiff that Ms. Craver directed him to monitor

21   Plaintiff. (UF ¶ 55.) Another employee of Defendant, Ms. Cruz Martinez, allegedly threatened

22   Plaintiff in connection with Plaintiff's participation in the March 2021 arbitration. (UF ¶ 56.)

23        On April 6, 2021, Plaintiff filed an unfair labor practice charge with the National Labor

24   Relations Board ("NLRB"). (UF ¶ 58.) In her charge, Plaintiff alleged she experienced retaliation

25   as a result of serving as a "key" witness in the March 2021 arbitration. (UF ¶ 58.) On May 6,

26   2021, the NLRB approved the withdrawal of the unfair labor charge. (UF ¶ 59.)

27        On June 14, 2021, Plaintiff received from Defendant a "Corrective Action" as a final

28   warning for attendance points. (UF ¶ 63.) Defendant agreed to remove the attendance points after

Plaintiff grieved the "Corrective Action." (UF ¶ 64.) Later, on July 19, 2021, Plaintiff filed a grievance with the Union regarding an "unjust verbal / written warning" that Defendant issued to Plaintiff. (UF ¶ 65.) Defendant removed the warning in response to Plaintiff's grievance. (UF ¶ 65.) That same day, Plaintiff filed a grievance with the Union alleging Defendant violated its internal harassment policy by allowing Plaintiff's coworker, Mr. Senseney, "to use coarseness towards" Plaintiff. (UF ¶ 66.) The Union withdrew Plaintiff's allegations after Defendant agreed to investigate Plaintiff's allegations. (UF ¶ 67.) On July 23, 2021, Plaintiff provided a written statement concerning her complaint against Mr. Senseney. (UF ¶ 68.) Therein, Plaintiff alleged that on July 19, 2021, when Plaintiff reported Mr. Senseney's behavior to Mr. Borden, Mr. Borden stated he would talk to Mr. Senseney. (UF ¶ 68.) Plaintiff alleged she also told Mr. Borden that there "are occasions where [she] gets told to go talk to [Mr. Senseney] to give him work instructions," and he would tell Plaintiff "[f]uck you, you're not my boss." (UF ¶ 68.) Plaintiff also alleged she told Mr. Borden that "I don't want [Mr. Senseney] to get written up. [He] just needs to respect me and stop arguing with me. I want the cursing to stop." (UF ¶ 68.)

On July 23, 2021, Mr. Senseney submitted a written response to Plaintiff's complaint, in which he stated that he did not curse at nor disrespect Plaintiff. (UF ¶ 69.) Mr. Senseney further explained that "[Plaintiff] is constantly doing personal stuff while she's working. [Plaintiff] is constantly on the phone on social media while working. [Plaintiff] is addicted to social media." (UF ¶ 69.) Mr. Senseney also stated he thought Ms. Craver was "afraid of [Plaintiff]." (UF ¶ 69.) Lastly, Mr. Senseney stated that "[Plaintiff] is always harassing me, telling me that I'm going to get in trouble and written up if I get [sic] a mistake. [Plaintiff] likes to create trouble and create conflict. [Plaintiff] is very abusive." (UF ¶ 69.)

On September 3, 2021, Defendant issued Plaintiff a "Corrective Action Notice" for violating Defendant's cell phone policy, which resulted in a three-day suspension of Plaintiff. (UF ¶ 70.) In her deposition testimony, Plaintiff averred that she should not have received the notice because she was unaware of the policy. (UF ¶ 71.) Plaintiff claimed that the notice was in retaliation for participating in the Union arbitration. (UF ¶ 71.) In response to the "Corrective Action Notice," Plaintiff filed a grievance on September 7, 2021. (UF ¶ 72.) Defendant denied

Plaintiff's grievance but later settled it and agreed to pay Plaintiff for the hours missed from the

suspension. (UF ¶ 73.) Also on September 7, 2021, Plaintiff filed a grievance with the Union

regarding harassment allegations against Mr. Borden, specifically that he "was loud and

disrespectful while [Plaintiff] was taking a break." (UF ¶ 74.) The Union withdrew the grievance

after deciding it "could not be sustained in arbitration." (UF ¶ 87.)

Around this time, Defendant posted a job opening for two "Inventory Control Specialists,"

which included the requirement that applicants not have work schedule limitations. (UF ¶ 75.) In

September 2021, Plaintiff bid on this position, but Defendant gave it to two other employees. (UF

¶ 76.) In her deposition testimony, Plaintiff stated she believed that based on the CBA, Defendant

should have awarded her the "Inventory Control Specialist" position. (UF ¶ 77.) Following the

denial, Plaintiff filed a grievance with the Union on September 30, 2021. (UF ¶ 78.) Defendant

denied the grievance. (UF ¶ 79.) However, the Union pursued the grievance, and Defendant then

offered Plaintiff the "Inventory Control Specialist" position. (UF ¶ 80.) Plaintiff, however,

declined the offer. (UF ¶ 80.)

On October 5, 2021, Plaintiff reported the following to the Defendant's "Ethics Point

Hotline:"

> (1) Della Craver, Joshua Borden, and Mauricio Chang have harassed
> [Plaintiff] for months, (2) [Plaintiff] experienced retaliation after
> participating "in an [sic] union arbitration case," (3) Craver, Borden,
> and Chang called Plaintiff "a liar regarding the FMLA incident," (4)
> Borden and Chang suspended Plaintiff for three days when she used
> her phone during a break, and (5) [Plaintiff] believes that Borden,
> Craver, and Chang are discriminating against her because of her
> health condition.

(UF ¶ 81.) The next day, Plaintiff also reported to the "Ethics Point Hotline" that Defendant

threatened to terminate her employment because Plaintiff yelled at superiors, flung papers on a

desk, and slammed a door. (UF ¶ 82.) Plaintiff reported that on October 8, 2021, Defendant

suspended her because she was browsing the internet on Defendant's computer. (UF ¶ 83.)

Defendant then investigated Plaintiff's "Ethics Point Hotline" complaint, which included

6

interviewing Plaintiff and other employees.[5] (UF ¶ 84.) Through its investigation, Defendant concluded that no harassment or retaliation occurred as to the specific incidents reported by Plaintiff and that Defendant had accommodated Plaintiff's six-day workweek restriction. (UF ¶ 85.) On November 19, 2021, Defendant, Plaintiff, and the Union met to discuss Defendant's investigation into Plaintiff's complaint. (UF ¶ 86.)

On September 1, 2022, Defendant issued to Plaintiff another final warning "Corrective Action Notice" because she violated Defendant's policy when she "raised [her] voice while using curse words . . . ." (UF ¶ 90.) Plaintiff grieved the final warning, and Defendant withdrew the disciplinary action. (UF ¶ 91.) Two weeks later, on September 16, 2022, Defendant issued Plaintiff two "Attendance Corrective Action Notices" for attendance points. (UF ¶ 92.) In response, on September 29, 2022, Plaintiff filed a grievance regarding the two notices for attendance points. (UF ¶ 93.) Defendant then "negated" the notices to a written warning. (UF ¶ 94.) Plaintiff then met with the Union and Defendant to discuss Plaintiff's grievances for the attendance points. (UF ¶ 95.) Plaintiff alleges that during the meeting, Mr. Borden told Plaintiff they did not want to accommodate Plaintiff's six-day workweek restriction because the other employees had to work seven days. (UF ¶ 95.) Plaintiff alleges the Union told Defendant during the meeting that California law requires one day of rest per week. (UF ¶ 96.)

After this meeting, in January 2023, Defendant and the Union signed an attendance agreement. (UF ¶ 97.) The attendance agreement included the provisions that Plaintiff would be held to Defendant's attendance points policy, Defendant would accommodate Plaintiff's six-day workweek restriction through the approval period unless extended through Defendant's Americans with Disabilities Act ("ADA") process, Defendant may approve or deny new accommodations, and Defendant would set Plaintiff's attendance point balance to 1.5 points. (UF ¶ 98.)

---

[5] Plaintiff purportedly disputes this fact, stating that "Defendants failed to conduct an unbiased investigation and continuously and systematically failed to honor Plaintiff's work restriction, including finding and/or implementing accommodations for same." (Doc. No. 58-1 at 62–63.) However, the evidence cited by Plaintiff primarily concerns Plaintiff's various requests for work accommodations, not Defendant's 2021 "Ethics Point Hotline" complaint investigation. (*Id.*) Thus, Plaintiff has not shown this fact, which Defendant has supported with evidence, is disputed.

1    Later that year, in October 2023, the Union informed Defendant that Plaintiff complained

2    about: her attendance points, Defendant questioning Plaintiff's accommodation, and Defendant's

3    discipline of Plaintiff regarding her cell phone usage. (UF ¶ 99.) Defendant told the Union that

4    the parties agreed that: Plaintiff's only accommodation is for a six-day workweek, Plaintiff would

5    need to submit documents for any additional accommodations, Plaintiff is held to Defendant's

6    attendance policy, and discipline of Plaintiff for cell phone use was not improper. (UF ¶ 100.)

7    **B.    Procedural Background**

8    On April 5, 2022, Plaintiff filed a complaint against Defendant in the Stanislaus County

9    Superior Court alleging fourteen causes of action: failure to provide meal breaks in violation of

10    California Labor Code §§ 226.7 and 512 and IWC Wage Orders No. 5 and 9 (claim one); failure

11    to provide rest breaks in violation of California Labor Code § 226.7 and IWC Wage Orders No. 5

12    and 9 (claim two); failure to furnish accurate itemized wage statements in violation of California

13    Labor Code § 226 (claim three); unfair business practice in violation of California Business and

14    Professions Code § 17200 *et seq.* (claim four); harassment based on disability in violation of the

15    Fair Employment and Housing Act ("FEHA"), California Government Code § 12940(j) (claim

16    five); discrimination based on disability in violation of FEHA, California Government Code §

17    12940(a) (claim six); failure to engage in the interactive process in violation of FEHA, California

18    Government Code § 12940(n) (claim seven); failure to make a reasonable accommodation in

19    violation of FEHA, California Government Code § 12940(m)(1) (claim eight); failure to prevent

20    harassment and discrimination in violation of FEHA, California Government Code § 12940(k)

21    (claim nine); retaliation in violation of FEHA, California Government Code § 12940(h) (claim

22    ten); whistleblower retaliation in violation of California Labor Code § 1102.5(b) (claim eleven);

23    negligent supervision (claim twelve); negligent hiring/retention (claim thirteen); and intentional

24    infliction of emotional distress (claim fourteen). (UF ¶ 104; Doc. No. 1-2.) On June 9, 2022,

25    Defendant removed this action to this court. (Doc. No. 1.)

26    On July 29, 2024, Defendant filed the pending motion for summary judgment on

27

28

1  Plaintiff's fourteen claims.[6] (Doc. No. 48.) Plaintiff filed her opposition to Defendant's motion

2  for summary judgment on August 23, 2024.[7] (Doc. No. 49.) Defendant filed a reply thereto on

3  September 10, 2024. (Doc. No. 58.)

_____

[6] Defendant also concurrently filed a request for judicial notice of eight sets of documents. (Doc. No. 48-10.) Defendant requests the court take judicial notice of (1) Plaintiff's unfair labor practice charge filed with the NLRB on or about April 6, 2021; (2) the NLRB's notice of approval of withdrawal of Plaintiff's unfair labor practice charge; (3) Plaintiff's January 8, 2019 CRD complaint; (4) Plaintiff's February 12, 2019 filed with the Equal Employment Opportunity Commission; and (5) Plaintiff's April 7, 2021 CRD complaint. (Doc. No. 48-10 at 2.) Pursuant to Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Records and reports of administrative bodies are proper subjects of judicial notice." *Elliott v. QF Circa 37, LLC*, No. 16-cv-0288-BAS-AGS, 2017 WL 6389775, at *3 (S.D. Cal. Dec. 14, 2017); *see also Collins v. Wal-Mart Stores, Inc.*, No. 3:23-cv-01368-RBM-DEB, 2024 WL 56993, at *4 (S.D. Cal. Jan. 4, 2024), *reconsideration denied,* No. 3:23-cv-01368-RBM-DEB, 2025 WL 1435525 (S.D. Cal. May 19, 2025) (granting request for judicial notice of Plaintiff's CRD complaint and "noting that district courts routinely take judicial notices of [CRD] complaints and right to sue letters") (collecting cases). Accordingly, the court will grant Defendant's request for judicial notice of the documents noted above. Defendant also requests the court take judicial notice of a class action settlement in a Central District of California case, *Negrete, et al. v. Conagra Foods, Inc., et al.*, No. 16-cv-0631-FMO and a class action settlement in a Los Angeles County Superior Court case, *Alvarez v. Conagra Foods, Inc., et al.*, No. 21-cv-37375. (Doc. No. 48-10 at 2.) "Because court filings are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned,' pleadings filed and orders issued in related litigation are proper subjects of judicial notice under Rule 201." *McVey v. McVey*, 26 F. Supp. 3d 980, 984 (C.D. Cal. 2014) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n. 6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.")). Therefore, the court will take judicial notice of these settlement agreements. Lastly, the court will deny Defendant's request for judicial notice of Plaintiff's operative complaint because the court does not need to take judicial notice of filings already on the docket in this action. *Ne. Med. Servs., Inc. v. California Dep't of Health Care Servs.*, No. 2:19-cv-01489, 2019 WL 6918299, at *2 (E.D. Cal. Dec. 19, 2019) ("The [c]ourt need not and will not take judicial notice of [p]laintiff's complaint.").

[7] Plaintiff also interspersed numerous "objections" in response to Defendant's statement of undisputed facts. (*See* Doc. No. 50.) Most of Plaintiff's objections do not include any explanation or argument for the court to consider. *Id.* These objections are "meritless, if not downright frivolous." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021). Further, "[e]ven if the non-moving party's evidence is presented in a form that is currently inadmissible, such evidence may be evaluated on a motion for summary judgment so long as the moving party's objections could be cured at trial." *Zoom Imaging Sols., Inc. v. Roe*, No. 2:19-cv-01544-WBS-KJN, 2022 WL 4025293, at *3 (E.D. Cal. Sept. 2, 2022). Therefore, Plaintiff's objections are all overruled.

1

## LEGAL STANDARD

2      When the moving party "shows that there is no genuine dispute as to any material fact and

3  the movant is entitled to judgment as a matter of law," summary judgment is appropriate.

4  Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a

5  genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)

6  (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A fact is "material" if it "might affect

7  the outcome of the [action] under the governing law." *Momox-Caselis v. Donohue*, 987 F.3d 835,

8  841 (9th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986)). The

9  moving party may accomplish this by "citing to particular parts of materials in the record,

10  including depositions, documents, electronically stored information, affidavits or declarations,

11  stipulations (including those made for purposes of the motion only), admissions, interrogatory

12  answers, or other materials," or by showing that such materials "do not establish the absence or

13  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

14  support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B). Though justifiable inferences are viewed in

15  the light most favorable to the nonmoving party, the nonmoving party "may not rest upon mere

16  allegations or denials of [its] pleading." *Momox-Caselis*, 987 F.3d at 841 (quoting *Anderson*, 477

17  U.S. at 256).

18      "The moving party need only prove that there is an absence of evidence to support the

19  non-moving party's case" when the non-moving party bears the burden of proof at trial, as

20  Plaintiff does here. *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also*

21  Fed. R. Civ. P. 56(c)(1)(B). Summary judgment should be entered against a party who fails to

22  establish the existence of an element essential to that party's case when that party bears the

23  burden of proof at trial. *See Celotex*, 477 U.S. at 322. In such a case, there is no genuine issue of

24  material fact "since a complete failure of proof concerning an essential element of the nonmoving

25  party's case necessarily renders all other facts immaterial." *Id.* at 317.

26      If the moving party meets its initial responsibility, the burden then shifts to the opposing

27  party to establish that a genuine issue as to any material facts exists. *Matsushita Elec. Indus. Co.*

28  *v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*,

391 U.S. 253, 288–89 (1968). The opposing party does not need to establish a material issue of fact conclusively in its favor to establish a factual dispute. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.

## ANALYSIS

As an initial matter, the court notes that Plaintiff fails to cite to any evidence in the analysis section of her brief in opposition to Defendant's motion for summary judgment and relies on only nine legal authorities therein. It is well established that it is not the district court's task "to scour the record in search of a genuine issue of triable fact." *Californians for Renewable Energy v. Cal. Pub. Utilities Comm'n*, 922 F.3d 929, 935 (9th Cir. 2019) (citations omitted). Rather, the court "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id*. With this in mind, the court will address Defendant's motion as to each of Plaintiff's claims in turn.

### A.     Plaintiff's FEHA Claims (Claims Five, Six, Seven, Eight, Nine, and Ten)

#### 1.     Administrative Exhaustion Under FEHA

Plaintiff's fifth through tenth causes of action allege violations of FEHA. A plaintiff is required to exhaust all administrative remedies before filing a civil action bringing claims under FEHA based on allegations of discrimination or retaliation. *Chew v. City & Cnty. of San Francisco*, 714 F. App'x 687, 690 (9th Cir. 2017).[8] To satisfy the exhaustion requirement, a plaintiff must file a timely and sufficient administrative complaint with the Civil Rights Department ("CRD").[9] Cal. Gov't Code §§ 12960, 12965; *see also Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th Cir. 2001).

FEHA claims are subject to two statutory deadlines: one for filing the CRD administrative complaint and another for filing the civil lawsuit. *Acuna v. San Diego Gas & Elec. Co.*, 217 Cal.

---

[8] Citation to the unpublished Ninth Circuit opinions such as those cited here and elsewhere in this order is appropriate pursuant to Ninth Circuit Rule 36-3(b).

[9] The Department of Fair Employment and Housing formerly changed its name to the California Civil Rights Department ("CRD") on July 1, 2022. *See* https://calcivilrights.ca.gov/aboutcrd/. To avoid confusion, the court will refer to the department exclusively as the CRD in this order.

App. 4th 1402, 1410–13 (2013). Prior to January 1, 2020, complainants had to file a complaint with the CRD within one year of the unlawful practice. *See id.* at 1412 (citing Cal. Gov't Code § 12960(d)). After January 1, 2020, a complaint filed with the CRD "shall not be filed after the expiration of three years from the date upon which the unlawful practice or refusal to cooperate occurred." Cal. Gov't Code § 12960(e)(5). Second, "the person claiming to be aggrieved may bring a civil action . . . within one year from the date of [the CRD's right-to-sue] notice." Cal. Gov't Code § 12965(c)(1)(C). In other words, to satisfy the timing requirements under FEHA, the complainant must file a civil complaint initiating a lawsuit within one year of receiving a right-to-sue notice from the CRD. *See Mitchell v. State Dep't of Pub. Health*, 1 Cal. App. 5th 1000, 1004 (2016), *as modified on denial of reh'g* (Aug. 22, 2016). "It is the plaintiff's burden to plead and prove timely exhaustion of administrative remedies." *Ayala v. Frito Lay, Inc.*, 263 F.Supp.3d 891, 902 (E.D. Cal. 2017).

"Under FEHA, the scope of the [CRD] complaint defines the scope of the subsequent civil action." *Keever v. Mediation Ctr. of San Joaquin*, No. 2:13-cv-00029-KJM-KJN, 2015 WL 75194, at *6 (E.D. Cal. Jan. 6, 2015). "To exhaust his or her administrative remedies as to a particular act made unlawful by the FEHA, the claimant must specify that act in the administrative complaint, even if the administrative complaint does specify other cognizable wrongful acts." *Kaur v. Foster Poultry Farms LLC*, 83 Cal. App. 5th 320, 355 (2022) (citation omitted). If a plaintiff alleges conduct in the civil lawsuit that is outside the scope of the charge made in the written administrative complaint, that alleged conduct cannot serve as the basis for a claim because the plaintiff failed to exhaust administrative remedies as to that conduct. *Chew*, 714 F. App'x at 690. A plaintiff may, however, rely on allegations of conduct that are "like or reasonably related to the allegations" in the administrative charge to serve as a basis for a claim. *Id.*

Here, Plaintiff filed two separate administrative complaints with CRD, and for the reasons explained below, neither of those administrative complaints are sufficient to exhaust administrative remedies as to Plaintiff's claims in this action.

/////

12

1

*a.    Plaintiff's 2019 Administrative Complaint with CRD*

2         Plaintiff filed her first administrative complaint with the CRD on January 8, 2019—when

3  the one-year statute of limitations applied. (UF ¶ 32.) In her first administrative complaint,

4  Plaintiff named Defendant as the respondent and alleged the following:

5              I was subjected to discrimination, denied hire or promotion and
               denied work opportunities or assignments due to my disability
6              (mental). On or about July 13, 2018, I was offered the position of
               Raw Material Handler. On or about July 15, 2018, I provided
7              Respondent    with    medical    documentation    requiring    an
               accommodation. Subsequently, the offer for the Raw Material
8              Handler position was rescinded and the job description was changed
               to include no physical capability or work schedule limitations as a
9              requirement. From in or around April 2018 through July 2018, I was
               subjected to harassment due to my sex/gender (female). Male
10             coworkers would unplug my electric lift and placing [sic] a chalk
               behind the wheels daily, which could cause my lift to fall over. I
11             reported the harassment to Manager Del[l]a Craver and HR Manager
               Alicia Arriola however the harassment continued.
12
   (UF ¶ 32–34; Doc. No. 48-9 at 142, 143.)
13
          On January 7, 2020, the CRD issued Plaintiff a right-to-sue notice. (UF ¶ 38; Doc. No. 57-
14
   2 at 11–12.) The right-to-sue notice stated that any "civil action must be filed within one year
15
   from the date of this letter." (Doc. No. 57-2 at 11.) Plaintiff brought the current lawsuit more than
16
   one year after January 7, 2021, the deadline by which Plaintiff had to bring a civil suit against
17
   Defendant based on her CRD complaint. Therefore, Plaintiff cannot base her claims under FEHA
18
   in this case on her 2019 administrative complaint. *See Rankins v. United Parcel Serv., Inc.*, No.
19
   3:23-cv-05785-JSC, 2024 WL 1707245, at *3 (N.D. Cal. Apr. 19, 2024) (finding plaintiff could
20
   not premise her FEHA claims on an administrative complaint where she brought her civil lawsuit
21
   after the one-year deadline to file suit had passed).
22
                *b.    Plaintiff's 2021 Administrative Complaint with CRD*
23
          Plaintiff filed her second administrative complaint with the CRD on April 7, 2021 with the
24
   help of her counsel of record in this case. (UF ¶ 101; Doc. No. 48-9 at 218–22.) In her second
25
   administrative complaint, Plaintiff named Defendant as the respondent and alleged that "on or
26
   about March 16, 2021" the following occurred:
27
               Complainant  was  harassed  because  of  complainant's  medical
28             conditions   (cancer   or   genetic   characteristic),   other,   sexual

                                          13

1
2
3
4

> harassment- hostile environment. Complainant was discriminated against because of complainant's disability (physical or mental) and as a result of the discrimination was reprimanded, suspended. Complainant experienced retaliation because complainant reported or resisted any form of discrimination or harassment, participated as a witness in a discrimination or harassment complaint and as a result was reprimanded, other.

5   (UF ¶ 101; Doc. No. 48-9 at 221–22.) Plaintiff immediately received a right-to-sue letter, which

6   again indicated that any "civil action must be filed within one year from the date of this letter."

7   (Doc. No. 48-9 at 219.) Plaintiff timely filed the pending lawsuit against Defendant on April 5,

8   2022. (UF ¶ 104.)

9        However, Plaintiff's 2021 administrative complaint is not substantively sufficient to

10  exhaust her administrative remedies because, even though Plaintiff received a right-to-sue notice

11  and timely filed this civil lawsuit, the underlying administrative complaint does not describe

12  Plaintiff's allegations underlying her FEHA claims in this case. Under the California Code of

13  Regulations, to receive a right-to-sue notice, "an aggrieved person shall file a right-to-sue

14  complaint with the department containing the following: . . . (3) a description of the alleged acts

15  or actions of discrimination, harassment or retaliation; (4) the date or dates each alleged act of

16  discrimination, harassment or retaliation occurred, including the date of the last or most recent

17  alleged act . . . [and] (6) for retaliation complaints, the dates and type of protected activity in

18  which the complainant engaged." Cal. Code Regs. Tit. 2, § 10005(d). Plaintiff did not provide

19  such descriptions in her 2021 administrative complaint. Indeed, Plaintiff's 2021 administrative

20  complaint does not include any facts regarding the alleged conduct underlying Plaintiff's various

21  FEHA claims. Though Plaintiff's complaint includes a date ("March 16, 2021") and somewhat

22  describes the protected action she took ("participated as a witness in a discrimination or

23  harassment complaint"), (UF ¶ 101; Doc. No. 48-9 at 221–222), Plaintiff's 2021 administrative

24  complaint is comprised of conclusory allegations that do not provide the investigating agency or

25  Defendant with sufficient notice of the specific allegations of harassment and discrimination

26  complained of, as is required for administrative exhaustion of FEHA claims. Plaintiff also did not

27  include any details under the "Additional Complaint Details" section of the CRD complaint form.

28  (UF ¶ 101; Doc. No. 48-9 at 221.) District courts in California have routinely found that CRD

1    complaints devoid of factual allegations do not satisfy the administrative exhaustion requirement

2    under California law. *See Tonoyan v. W. Refining Retail, LLC*, No. 2:19-cv-08728-ABA, 2020

3    WL 13132899, *1 (C.D. Cal. Feb 5, 2020) (finding plaintiff did not exhaust administrative

4    remedies under FEHA where plaintiff's administrative complaint failed to set forth facts

5    supporting plaintiff's FEHA claims); *Rankins*, 2024 WL 1707245, *5 ("Plaintiff's 2022

6    complaint does not satisfy the administrative exhaustion requirement under California law

7    because it fails to provide any relevant factual details that would allow [CRD] to investigate the

8    claims alleged in her complaint."); *Martinez v. Conagra Foods Packaged Foods, LLC*, No. 2:25-

9    cv-00795-DJC-CKD, 2025 WL 2419998, *3 (E.D. Cal Aug. 21, 2025) (finding plaintiff did not

10   sufficiently exhaust administrative remedies under FEHA where plaintiff's administrative

11   complaint "relie[d] on conclusory allegations that leave the agency and [d]efendants in the dark

12   about whether the claim is viable or supported by evidence"). Therefore, Plaintiff's 2021

13   administrative complaint does not satisfy the administrative exhaustion requirement and cannot

14   serve as the basis for any of Plaintiff's FEHA claims in this case.

15        Accordingly, the court will grant summary judgment in Defendant's favor as to each of

16   Plaintiff's FEHA claims: harassment based on disability (claim five); discrimination based on

17   disability (claim six); failure to engage in the interactive process (claim seven); failure to make a

18   reasonable accommodation (claim eight); failure to prevent harassment and discrimination (claim

19   nine); and retaliation (claim ten).

20   **B.    Plaintiff's Wage and Hour Claims (Claims One, Two, and Three)**

21        Defendant also moves for summary judgment on Plaintiff's claims for failure to provide

22   meal breaks (claim one); failure to provide rest breaks (claim two); and failure to furnish accurate

23   itemized wage statements (claim three). (Doc. No. 48.) Defendant argues it is entitled to summary

24   judgment on these claims because "Plaintiff has conceded in her discovery and through the meet

25   and confer process that she cannot maintain these claims against [Defendant] because these

26   claims were settled as part of two class actions." (Doc. No. 48-1 at 27.) In support of this

27   argument, Defendant cites to a copious number of documents concerning two wage and hour

28   class actions that were brought against Defendant, and subsequent settlement agreements. (Doc.

No. 48-9 at 224–401; 403–633.) It is also undisputed that "Plaintiff has settled her wage and hour claims as a member of two separate class actions" and that she "is not seeking damages related to any wage and hour violations and will be dismissing the related claims in her complaint." (UF ¶¶ 122, 123.)

In her opposition to the pending motion, Plaintiff does not address Defendant's arguments nor even mention her wage and hour claims, and the court may infer, under the circumstances, that Plaintiff has "abandoned" these claims. *See Marentes v. State Farm Mut. Auto. Ins. Co.*, 224 F. Supp. 3d 891, 919 (N.D. Cal. 2016) ("When a non-moving party opposes summary judgment with respect to some claims, but not others, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.") (citations omitted).

For these reasons, the court will grant Defendant's motion for summary judgment as to Plaintiff's claims for failure to provide meal breaks (claim one); failure to provide rest breaks (claim two); and failure to furnish accurate itemized wage statements (claim three).

## C.    Plaintiff's Claims for Negligent Supervision and Hiring/Retention (Claims Twelve and Thirteen)

To establish liability for negligent hiring, supervision, and retention, a Plaintiff must show: (1) the employer had a duty of care; (2) the employer breached that duty; (3) the breach proximately caused the plaintiff's injury; and (4) damages. *See Dent v. Nat'l Football League*, 902 F.3d 1109, 1121–2 (9th Cir. 2018) (citing *Phillips v. TLC Plumbing, Inc.*, 172 Cal. App. 4th 1133, 1139 (2009)). "There are 'two elements necessary for a duty to arise in negligent hiring and negligent retention cases—the existence of an employment relationship *and* foreseeability of injury.'" *Dent*, 902 F.3d at 1122 (quoting *Phillips*, 172 Cal. App. 4th at 1139). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide. However, the elements of breach of that duty and causation are ordinarily questions of fact for the jury's determination." *Phillips*, 172 Cal. App. 4th at 1139 (citation omitted). Negligence liability is imposed on an employer where it "knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes."

16

1    *Id.* (quoting *Doe v. Cap. Cities*, 50 Cal. App. 4th 1038, 1054 (1996)). Claims for negligent hiring,

2    supervision, and retention are also subject to a two-year statute of limitations. *See* Cal. Civ. Proc.

3    Code § 335.1; *see also Brent v. Boeing Co.*, No. 2:17-cv-04429-ODW, 2019 WL 4450424, at *12

4    (C.D. Cal. Sept. 17, 2019) (citations omitted).

5         Here, Plaintiff brings claims for negligent hiring and negligent supervision/retention

6    against Defendant for failing to prevent "managing agents" from discriminating against and

7    harassing Plaintiff. (Doc. Nos. 48-1 at 25; 1-2 at 27–8.) Defendant argues it is entitled to

8    summary judgment on Plaintiff's claims for negligent hiring and negligent supervision/retention

9    for two primary reasons. (Doc. No. 48-1 at 24–5.) First, Defendant argues that a two-year statute

10   of limitations applies to claims for negligent hiring, supervision, and retention under California

11   law, and the evidence before the court on summary judgment is devoid of any evidence of

12   Defendant's negligence from April 2020 (two years before Plaintiff filed this civil action) until

13   the present. (Doc. No. 48-1 at 25.) The court agrees, and Plaintiff does not dispute, that Plaintiff's

14   claims are subject to a two-year statute of limitations. *See* Cal. Civ. Proc. Code § 335.1. Thus, any

15   such negligence claim predicated on conduct that allegedly occurred prior to April 5, 2020—two

16   years prior to Plaintiff filing this lawsuit—is time barred. *See Brent*, 2019 WL 4450424, at *12.

17        Second, as to Plaintiff's complaints of alleged incidents that occurred after April 5, 2020,

18   Defendant argues that there is no evidence before the court on summary judgment that any of the

19   "bad actors" identified in those alleged incidents are or were "managing agents." (Doc. No. 48-1

20   at 25.) Plaintiff argues in opposition that "Defendant[] knew or should have known about

21   misconduct of its employees and failed to take appropriate action," and that "[t]his evidence

22   creates a triable issue of fact" as to that issue. (Doc. No. 49 at 21.)

23        Defendant states—and supports with admissible evidence—that it exercised reasonable

24   care in its duties owed to Plaintiff because Defendant "encourages employees to report

25   discrimination, harassment, and retaliation[,] and investigates such complaints, as demonstrated

26   by [Defendant's] investigation of Plaintiff's report to the Ethics Point Hotline in 2021." (Doc. No.

27   48-1 at 26 (citing UF ¶ 3, 67–9, 86–7.)) Though Plaintiff purports to dispute the fact that

28   Defendant investigated Plaintiff's Ethics Point Hotline complaint by stating that Defendant failed

                                              17

to conduct an "unbiased investigation," the deposition testimony cited by Plaintiff does not actually controvert this fact. (*See* UF ¶ 84–5; Doc. Nos. 51 at 5, 7, 9–12; 52 at 3–4.) The deposition testimony Plaintiff points to does not concern nor address Defendant's 2021 investigation into Plaintiff's report to the Ethics Point Hotline. Nor does Plaintiff explain what evidence leads her to believe that Defendant's investigation was "unbiased." (*See* UF ¶ 85.) Instead, the deposition testimony Plaintiff cites concerns Plaintiff seeking workplace accommodations from Defendant on multiple occasions throughout her tenure as an employee of Defendant. (Doc. Nos. 51 at 5, 7, 9–12; 52 at 3–4.)

Moreover, Plaintiff has not submitted any evidence with her opposition to demonstrate a genuine dispute of material fact exists regarding whether Defendant breached its duty to use reasonable care in hiring and retaining employees. In her opposition, Plaintiff points to two occurrences after April 5, 2020, to support her argument that a triable issue of fact exists as to whether Defendant knew or should have known of employee misconduct and failed to act. (Doc. No. 49 at 21.) Specifically, Plaintiff summarizes encounters with two different coworkers concerning Plaintiff's assertion that Ms. Craver wanted to have Plaintiff fired:

> On 07/29/2020, Salvador Manzo Arteaga reported that Craver instructed him to obtain a final write-up for Plaintiff and to "get her fired;" On 03/16/2021, Manuel Gutierrez Hernandez provided a statement attesting to Craver's discriminatory conduct and her instructions to help get Plaintiff fired; and Plaintiff made multiple complaints through the company's Ethics Point Hotline and to HR about harassment and discrimination from her supervisors.

(Doc. No. 49 at 21.) However, the evidence Plaintiff cites to substantiate these supposed encounters—portions of Plaintiff's deposition testimony—have nothing to do with any such encounters or assertions that Ms. Craver wanted to have Plaintiff fired. (*See* Doc. Nos. 51, 52.) The court was able to locate other portions of Plaintiff's deposition testimony in which Plaintiff was asked about allegations in her complaint regarding Ms. Craver requesting that other employees help get Plaintiff fired. (Doc. Nos. 53 at 5; 1-2 at 9.) But even that deposition testimony presents evidentiary issues of double hearsay and foundation, and it does not support Plaintiff's version of the events. Plaintiff testified at her deposition that Ms. Craver told Salvador Arteaga and Manuel Gutierrez: "I want to get her fired, so tell me if she makes any mistakes or

1   whatever she's doing. I want you to watch her." (Doc. No. 53 at 5.) Plaintiff does not explain how

2   she has personal knowledge of what Ms. Craver said to Mr. Arteaga and Mr. Gutierrez. Notably,

3   Plaintiff does not point to any declaration or deposition testimony from Mr. Arteaga and Mr.

4   Gutierrez to substantiate her assertions. In addition to these concerns of admissibility, the

5   evidence itself also simply does not create a triable issue of fact as to as to whether Defendant

6   exercised reasonable care in its hiring and retention/supervision of its employees. At summary

7   judgment, Plaintiff "must provide more than conclusory statements, [she] must provide facts and

8   evidence that [Defendant] failed to take all reasonable steps to prevent discrimination and

9   harassment." *Brent*, 2019 WL 4450424, at *13. Plaintiff has not done so.

10        Therefore, the court will grant Defendant's motion for summary judgment as to Plaintiff's

11  negligent hiring claim and negligent retention/supervision claim.

12  **D.       Plaintiff's Claim for Whistleblower Retaliation (Claim Eleven)**

13        To state a claim for whistleblower retaliation under California Labor Code § 1102.5, a

14  plaintiff must establish (1) they engaged in a protected activity; (2) their employer subjected them

15  to an adverse employment action; and (3) their protected activity was a contributing factor to an

16  adverse employment action. *Wilson v. City of Fresno*, 763 F. Supp. 3d 1073, 1107 (E.D. Cal.

17  2025) (citing *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 710 (2022)); Cal. Lab.

18  Code. 1102.5(b). An employee engages in a whistleblower activity under Section 1102.5 when

19  they reasonably believe their employer is violating state or federal law or a local, state, or federal

20  rule/regulation, and they report the violation to "a government agency, with a person with

21  authority over the employee, or with another employee who has authority to investigate or correct

22  the violation." *Wilson*, 763 F. Supp. 3d at 1107 (quoting *Lawson*, 12 Cal. 5th at 710).

23        Further, a plaintiff must establish by a preponderance of the evidence "that retaliation for

24  an employee's protected activities was a contributing factor in a contested employment action."

25  *Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 982 (9th Cir. 2022) (citations omitted). After

26  a plaintiff has made this required prima facie showing, "the burden shifts to the employer to

27  demonstrate, by clear and convincing evidence, that it would have taken the action in question for

28  legitimate, independent reasons even had the plaintiff not engaged in protected activity." *Id.*

As for the first and second prongs, Plaintiff argues she engaged in protected activity by reporting Health Insurance Portability and Accountability Act ("HIPAA") violations; alerting Defendant to safety violations; reporting discrimination and harassment to human resources, the Union, and the Ethics Point Hotline; and participating as a witness in an arbitrating proceeding involving other employees. (Doc. No. 49 at 19.) Plaintiff states the adverse employment actions she experienced are denial of the opportunity to work as a Raw Materials Receiver, an increase in "scrutiny and disciplinary action" after she participated as a witness in an arbitration proceeding, and "being threatened with termination after complaining to Ethics Point Hotline." (*Id.*)

As to the third prong, Plaintiff asserts a causal link exists between the multiple protected activities and adverse employment actions because there was "temporal proximity," "statements from witnesses, such as Arteaga, who reported Craver instructed him to obtain a final write-up for [Plaintiff] to 'get her fired' after learning of complaints," and "[t]he pattern of escalating adverse actions following each instance of protected activity." (Doc. No. 49 at 19.)

Despite bearing the burden to demonstrate by a preponderance of the evidence that retaliation was a contributing factor in the alleged adverse employment actions, Plaintiff does not cite to any evidence to support her argument. The court nonetheless carefully reviewed Plaintiff's "Statement of Facts" section of her opposition brief and was still unable to identify any evidence supporting her assertion that statements from other employees, such as Mr. Arteaga, create a triable issue of fact as to causation. Notably, according to Plaintiff in her "Statement of Facts," Ms. Craver sought to get her removed "because of her FMLA and six-day work restrictions," not in response to any of Plaintiff's asserted protected activity. (Doc. No. 49 at 8.)

Further, Plaintiff merely asserts in conclusory fashion that there is "temporal proximity" between various asserted protected activities and adverse employment actions. (*See* Doc. No. 49 at 19.) Plaintiff does not cite to any evidence to support this assertion. Plaintiff also does not attempt to show causation by specifying that a particular adverse employment action occurred shortly after a particular protected activity. Similarly, Plaintiff's statement that Defendant demonstrated a "pattern of escalating adverse actions following each instance of protected activity" is also a conclusory allegation, unsupported by citations to evidence before the court on

1  summary judgment. Moreover, Plaintiff argues that because Defendant shifted justifications for

2  denying Plaintiff's accommodations and applied policies inconsistently, Defendant's "proffered

3  reasons for its action are suspect and potentially pretextual." (Doc. No. 49 at 20.) Again, Plaintiff

4  does not elaborate on these assertions nor point to any evidence to support them. Plaintiff offers

5  nothing more than conclusions and speculation in response to Defendant's evidence. Thus,

6  Plaintiff has not met her burden in opposing summary judgment. *See Cafasso, U.S. ex rel. v. Gen.*

7  *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a

8  plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory

9  allegations.").

10     Because Plaintiff has failed to show by a preponderance of the evidence "that retaliation

11  for an employee's protected activities was a contributing factor in a contested employment

12  action," Plaintiff has not established a prima facie case of retaliation in violation of Section

13  1102.5(b). *Killgore*, 51 F.4th at 982. Accordingly, the court will grant Defendant's motion for

14  summary judgment as to Plaintiff's Section 1102.5 retaliation claim.

15  **E.     Plaintiff's Claim for Intentional Infliction of Emotional Distress (Claim Fourteen)**

16     Under California law, the elements of an intentional infliction of emotional distress

17  ("IIED") claim are "(1) extreme and outrageous conduct by the defendant; (2) the defendant's

18  intention of causing or reckless disregard of the probability of causing, emotional distress; (3) the

19  plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation

20  of the emotional distress by the defendant's conduct." *Blanco v. Cnty. of Kings*, 142 F. Supp. 3d

21  986, 1002 (E.D. Cal. 2015) (quoting *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal*

22  *Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1259 (2005)).

23     Defendant moves for summary judgment on the basis that Ms. Craver's alleged comments

24  are not so "egregiously outside the realm of civilized conduct," even if they may be annoying and

25  insulting. (Doc. No. 48-1 at 23.) Defendant argues that allegations of the use of "coarse" language

26  and yelling towards Plaintiff are insufficient to constitute severe and outrageous conduct. (Doc.

27  No. 48-1 at 24.) Further, Defendant argues that Plaintiff's "alleged stress, anxiety, depression, and

28  irritable bowel syndrome" do not legally constitute severe distress, and that Defendant did not

1    cause these issues in Plaintiff. (*Id.*)

2          First, Plaintiff's claim for IIED is subject to a two-year statute of limitations.[10] Cal. Civ.

3    Code § 335.1; *see also Oxley v. Permanente*, No. 2:23-cv-02270-DJC-AC, 2024 WL 86283, at

4    *10 (E.D. Cal. Jan. 8, 2024). Accordingly, only conduct that occurred after April 5, 2020 (two

5    years before Plaintiff filed her civil complaint) may serve as the basis of Plaintiff's claim for

6    IIED.

7          Second, regardless of whether Defendant's employees' conduct constitutes severe and

8    outrageous conduct, Plaintiff has not proffered evidence sufficient to support a triable issue of

9    fact that the severe or extreme distress she has suffered was attributable to Defendant's conduct.

10   Plaintiff in her opposition does point to a period between August and September 2018, where

11   Plaintiff apparently took leave due to severe stress, however, this period is well outside the statute

12   of limitations for Plaintiff's IIED claim. (Doc. No. 49 at 21.) Plaintiff then generally asserts she

13   has suffered from "lack of sleep, irritable bowel syndrome, stress, anxiety, panic attacks and

14   severe depression, all of which she has sought medical treatment for." (Doc. No. 49 at 21.)

15   However, Plaintiff does not provide the court with any evidence regarding the specific time frame

16   in which Plaintiff suffered from these symptoms, nor any evidence to show such symptoms were

17   caused by specific instances of extreme and outrageous conduct.

18         To the contrary, Defendant has submitted evidence to support that Plaintiff's longstanding

19   mental health issues are attributable to other factors present in her life. (Doc. Nos. 48-6 at ¶¶ 4, 6,

20   15; 48-7 at 145–48; 57-4 at 34.) Indeed, Plaintiff does not dispute that she has suffered from

21   PTSD since 1999, that her depression and anxiety are attributes of her PTSD, that she was under

22   additional stress in 2020 due to her mother's hospitalization, and that taking care of her son, who

23   has autism, exacerbates her anxiety, among other issues. (UF ¶ 16, 105, 106, 108.) Plaintiff has

24   not submitted any evidence to show that the distress she has experienced was actually or

25   ─────────────────

26   [10] Plaintiff asserts that the two-year statute of limitations for conduct occurring before April 5, 2020, does not apply to her IIED claim because "[e]vidence shows a pattern of ongoing extreme

27   and outrageous conduct continuing well past this date." (Doc. No. 49 at 20.) However, Plaintiff does not cite to any evidence in support of this statement, nor does she proffer any argument as to

28   why, for example, the continuing violation doctrine applies to Plaintiff's IIED claim.

1  proximately caused by Defendant's conduct. At this stage in the proceedings, "[m]ere allegations

2  are not sufficient to defeat a motion for summary judgment." *St. Sauver v. Byrd-Hunt*, No. 20-cv-

3  0584-JAH-MDD, 2021 WL 3472698, at *5 (S.D. Cal. Aug. 5, 2021), *report and recommendation*

4  *adopted*, No. 20-cv-584-JAH-MDD, 2022 WL 2181580 (S.D. Cal. June 16, 2022) (citing *Berg v.*

5  *Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986)). Here, Plaintiff has failed to proffer anything more

6  than "mere allegations." *See id.*

7       Plaintiff has not submitted evidence sufficient to create a triable issue of fact that any

8  severe or extreme distress Plaintiff has suffered is attributable to Defendant's conduct.

9  Accordingly, the court will grant Defendant's motion for summary judgment as to Plaintiff's

10  IIED claim.

11  **F.      Plaintiff's Unfair Competition Law ("UCL") Claim (Claim Four)**

12       To state a UCL claim, "a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent

13  business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'" *Lippitt v.*

14  *Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003), *as amended* (Sept. 22,

15  2003) (quoting Cal. Bus. & Prof. Code § 17200). To state a claim under the unlawful prong of the

16  UCL, the alleged conduct must violate a "borrowed" law. *Davis v. HSBC Bank Nev., N.A.*, 691

17  F.3d 1152, 1168 (9th Cir. 2012) (citation omitted). No independent right to sue exists under the

18  "unlawful" prong of the UCL. *Mejia v. Chipotle Mexican Grill, Inc.*, 793 F. App'x 519, 521 (9th

19  Cir. 2019).

20       Defendant moves for summary judgment on Plaintiff's UCL claim because it is derivative

21  of Plaintiff's FEHA claims. (Doc. No. 48-1 at 27.) Plaintiff appears to concede that to the extent

22  her UCL claim is derivative of her FEHA claims, her UCL claim fails. (Doc. No. 49 at 24.)

23  Further, though Plaintiff does argue that her UCL claim "is not solely dependent on FEHA

24  violations" and "Defendant[] engaged in unfair business practices that go beyond FEHA

25  violations," she does not elaborate on what specific unfair business practices Defendant engaged

26  in or cite to any evidence in support thereof. (Doc. No. 49 at 24.) Plaintiff's vague assertion that

27  her UCL claim is based on other "unfair business practices" is a conclusory allegation and does

28  not provide a basis upon which Plaintiff may proceed on her claim.

Because Plaintiff's FEHA claims fail due to Plaintiff's failure to exhaust administrative remedies, any UCL claim predicated upon them also fail. *See Valladares v. Specialized Loan Servicing, LLC,* No. 1:23-cv-01224-NODJ-SAB, 2023 WL 8435575, at *4 (E.D. Cal. Dec. 5, 2023) (dismissing plaintiff's UCL claim where plaintiff failed to properly state a claim for a violation of any underlying law); *Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178 (2001) (UCL claims "stand or fall depending on the fate of the antecedent substantive causes of action."). Further, because Plaintiff's other claims fail, her UCL claim fails to the extent that she predicates her UCL claim on those other claims. *See id.* Thus, the court will grant Defendant's motion for summary judgment as to Plaintiff's UCL claim. *See Richter v. T-Mobile USA, Inc.*, No. 20-cv-00396-JVS-ADS, 2021 WL 4864735, at *8 (C.D. Cal. Oct. 4, 2021) ("When a statutory claim fails, a derivative UCL claim also fails.") (quoting *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012)).

## CONCLUSION

For the reasons set forth above:

1.    Defendant's motion for summary judgment (Doc. No. 48) is GRANTED in its entirety;

2.    Defendant's request for judicial notice (Doc. No. 48-10) is GRANTED in part and DENIED in part;

3.    Judgment shall be entered in favor of Defendant; and

4.    The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:    **January 2, 2026**

Dena Coggins
United States District Judge

24